UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BILLY JAMES WILLIAMS,

    Plaintiff,

v.                                                      Case No:   8:22-cv-2279-JLB-CPT

SCHOOL BOARD OF PINELLAS
COUNTY, FLORIDA,

    Defendant.
_____

## ORDER

Plaintiff Billy James Williams ("Mr. Williams") brings suit against his former employer, Defendant School Board of Pinellas County, Florida[1] (the "School Board"), for employment discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111–12117. (Doc. 1). Before the Court is the School Board's Motion to Dismiss Mr. Williams's Complaint. (Doc. 7). Mr. Williams has not responded to the School Board's Motion, and the time to do so has expired. *See* M.D. Fla. R. 3.01(c). After careful review of the parties' filings, the Court GRANTS the School Board's Motion to Dismiss. Mr. Williams's Complaint is DISMISSED without

---

[1] Mr. Williams referred to the Defendant in this case as "Pinellas County Schools" in his Complaint. Defendant, however, advises that the properly named Defendant is the "School Board of Pinellas County, Florida." (*See* Doc. 7 at 1 n. 1.) The Court will adopt this corrected party name and will refer to Defendant as the School Board of Pinellas County, Florida as courts have done in other cases in which the School Board of Pinellas County, Florida is a party. *See, e.g., Mosely v. Sch. Bd. of Pinellas Cnty., Fla.*, 484 U.S. 830 (1987).

1

prejudice.  Mr. Williams will have the opportunity to amend his Complaint consistent with this Order, should he choose to proceed forward with this litigation.

## BACKGROUND

Mr. Williams filed his Complaint *pro se*, but he has since retained counsel. (*See* Doc. 15).  The Court construes the *pro se* Complaint liberally, accepts the facts alleged in the Complaint as true, and construes all reasonable inferences in the light most favorable to Mr. Williams, as is required at the Motion to Dismiss stage. *See Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).

Mr. Williams was working as a bus driver for the School Board, and in March 2018, Mr. Williams went on medical leave.  (Doc. 1 at 5–6).  Mr. Williams asserts that he has a "disability or perceived disability," but he does not specify the nature of this disability and it is unclear whether his medical leave was related to his disability or whether it was related to some other illness.  (*Id.* at 5).  On October 10, 2018, the School Board held a hearing, which Mr. Williams attended "to try and save [his] job."  (*Id.* at 6).  Four days later, Mr. Williams received a letter, stating he had been terminated.  (*Id.*)

In November 2018, Mr. Williams spoke with "Mr. T Mark," an individual who the Court presumes to be an employee or representative of the School Board. (*Id.*) Mr. T. Mark told Mr. Williams that he could be rehired if he "brought in documentation that [he] could return to work full duty no restrictions."  (*Id.*)

On January 6, 2019, Mr. Williams reported to the "compound where [he] had

been working" prior to his medical leave, filled out paperwork, and took a dexterity test "to see if [he] could perform the duties of [his] job and drive the bus." (*Id.*) Mr. Williams alleges that he passed this test. (*Id.*) He also provided the examiner with his Department of Transportation card, which he asserts was valid. (*Id.*)

The School Board then required Mr. Williams to get a physical examination, which Mr. Williams believes was a "DOT physical." (*Id.*) Mr. Williams states that he did not pass this exam, and that he "never heard from [the School Board] again." (*Id.*) Mr. Williams filed a charge with the Equal Employment Opportunity Commission on July 20, 2020, and on July 8, 2022, he received a Right to Sue letter. (*Id.* at 7). On October 5, 2022, Mr. Williams filed a Complaint in this Court against the School Board under the ADA for (1) failure to hire him, (2) termination of his employment, (3) failure to accommodate his disability, (4) retaliation, and (5) other acts, specifically, that he "was demoted [and] had to go to [the] back of the line." (*Id.* at 5).

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint and requests that the court determine whether the complaint sets forth sufficient allegations to establish a claim for relief." *Gibbs v.*

*Rep. Tobacco, L.P.*, 119 F. Supp. 2d 1288, 1290 (M.D. Fla. Sept. 26, 2000). "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the proponent can prove no set of facts that support a claim upon which relief can be given." *Reynolds v. Gables Residential Servs.*, 428 F. Supp. 2d 1260, 1263 (M.D. Fla. April 6, 2006). When considering a motion to dismiss, the Court must limit its evaluation to the pleadings and any exhibits attached to those pleadings. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . exceedingly low." *Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir. 1985) (internal quotation marks omitted).

## DISCUSSION

To reiterate, Mr. Williams alleges five types of discriminatory conduct in his ADA claim: (1) failure to hire him, (2) termination of his employment, (3) failure to accommodate his disability, (4) retaliation, and (5) other acts, specifically his demotion and "ha[ving] to go to back of the line." (*See* Doc. 1 at 5). The Court will assess claims (1) and (2) together, then claim (3), and, lastly, claims (4) and (5) together.

### I.  Mr. Williams has failed to state a claim for discrimination under the ADA under the theories of "failure to hire" and "termination."

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

4

training, and other terms, conditions, and privileges of employment." *See* 42 U.S.C. § 12112(a). The Court understands this subsection to include Mr. Williams's claims for "failure to hire" and "termination of his employment." To state a claim for discrimination under the ADA, a plaintiff must allege that he was (1) disabled, (2) a qualified individual, and (3) subjected to unlawful discrimination because of his disability. *See Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities . . . a record of such an impairment . . . or . . . being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12012(2)(B).

Here, Mr. Williams has failed to identify any physical or mental impairment that he suffers from or any way in which a major life activity has been substantially limited by such an impairment as required by the statute. While he checked the box on the *pro se* complaint form indicating that he has a "disability or perceived disability," he does not specify the nature of his disability, despite the form's clear

5

indication to do so. (*See* Doc. 1 at 5).

Ultimately, failure to identify any alleged disability is fatal to Mr. Williams's ability to withstand the School Board's motion to dismiss his ADA claim. *See Chapman v. U.S. Postal Service*, 442 F. App'x, 480, 485 (11th Cir. 2011) (affirming dismissal of employee's ADA claim on the basis that she had not properly stated such a claim because "she did not sufficiently allege a disability . . . . She did not specify whether she had a physical or a mental disability, what the disability was, or how it impaired a major life activity."). As the Eleventh Circuit has instructed, "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." *Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996). And where a plaintiff cannot show "that [his] employer had actual or constructive knowledge of [his] disability[,]" the plaintiff cannot "sustain a prima facie case of handicap discrimination." *See id.*

And though *pro se* complaints are to be construed liberally, courts throughout the Eleventh Circuit have applied the same pleading requirements to *pro se* plaintiffs, looking unfavorably on bare or conclusory assertions in ADA claims. *See, e.g., Brown v. Mobile Cnty. Comm'rs*, No. 14-343-KD-C, 2015 WL 1444965, at *6 (S.D. Ala. Mar. 30, 2015) (dismissing *pro se* plaintiff's ADA claim because "[t]he [p]laintiff's bare assertion that she was discriminated against on the basis of a disability is unsupported by any factual allegations . . . . The plaintiff cannot state a claim for disability discrimination merely by asserting that she was injured in an automobile accident in her employee parking lot"); *Marsh v. Ga. Dept. of Behav. and*

6

*Health Developmental Disabilities*, No. CV410-273, 2011 WL 806423, at *1 n.3, *1 (S.D. Ga. Feb. 14, 2011), *report and recommendation adopted by* 2011 WL 806658 (Mar. 2, 2011). ("[P]laintiff must plead more than threadbare recitals, legal conclusions and the mere possibility of misconduct . . . . [I]t is not sufficient simply to cite to various health problems and an adverse employment result"); *Royster v. Escambia Cnty. Nursing Home*, No. 3:06cv52/MCR/MD, 2006 WL 5882171, at *3 (N.D. Fla. Mar. 31, 2006) ("[P]laintiff neither claims nor alleges facts to suggest she has a disability. Even assuming *arguendo* that she does, she fails to allege facts that even remotely suggest defendants' decision to deny her medical benefits was the result of discrimination based on that disability.").

Because he failed to specify his disability, whether the school board perceived his condition, or how he was discriminated against by the School Board on the basis of this perceived disability, Mr. Williams has failed to state a claim for relief under the ADA based on a theory of failure to hire or unlawful termination. *See* 42 U.S.C. § 12102(3) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity"); *see also Mayorga v. Alorica, Inc.*, No. 12-21578-CIV, 2012 WL 3043021, at *8 (S.D. Fla. July 25, 2012) (explaining that the relevant inquiry in disability discrimination cases brought under the ADA is how the defendant "perceived [plaintiff's] condition, including the reactions and perceptions of the

persons interacting or working with [him].") Accordingly, Mr. Williams has failed to state a claim for discrimination under the ADA based on a theory of failure to hire or unlawful termination.

> **II.   Mr. Williams has failed to state a claim for discrimination under the ADA based on a theory of failure to accommodate.**

The third of Mr. Williams's five theories of discrimination under the ADA is that the School Board "fail[ed] to accommodate [his] disability." (Doc. 1 at 5). Under the ADA, an employer discriminates against a qualified individual on the basis of disability by, among other things:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A). To state a *prima facie* claim for failure to accommodate under the ADA, a plaintiff must show that: (1) he is disabled; (2) he was a qualified individual at the relevant time, which means that he could perform the essential functions of the job; and (3) he was discriminated against because of his disability. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). Critically, where an employee has failed to request a reasonable accommodation, his failure to do so is "fatal to the prima facie case." *See Warren v. Volusia Cnty., Fla.*, 188 F. App'x 859, 863 (11th Cir. 2006). As the Eleventh Circuit has stated clearly, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

8

Mr. Williams has failed to make this *prima facie* case because, as outlined above, he has not properly asserted that he is disabled. Furthermore, Mr. Williams has failed to assert any facts indicating that the School Board knew about his disability (such that it could discriminate against him because of it) or that he proposed any reasonable accommodations to the School Board. Thus, Mr. Williams has not adequately alleged that the School Board's duty to provide a reasonable accommodation was triggered. *See Gaston*, 167 F.3d at 1363. Instead, Mr. Williams merely checked the box on the form complaint for "[f]ailure to accommodate my disability." (Doc. 1 at 5). Ultimately, Mr. Williams's omission of how the School Board failed to reasonably accommodate him, or what accommodations—if any—he was owed, is "fatal to the prima facie case." *See Warren*, 188 F. App'x at 863. Accordingly, Mr. Williams has failed to state a claim for discrimination under the ADA under a theory of alleged failure to accommodate.

### III.   Mr. Williams has failed to state a claim for retaliation under the ADA.

The Court notes at the outset of this subsection regarding retaliation that it reads Mr. Williams's fifth cause of action—"[o]ther acts: I was demoted had to go to back of the line"—as part of the retaliation count since the alleged demotion is presumed to be connected to his disability and is the type of adverse employment action contemplated by the subsection of the ADA prohibiting retaliation, 42 U.S.C. § 12203(a). (*See* Doc. 1 at 5). This subsection of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

9

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

As the Eleventh Circuit has instructed, "to successfully allege a prima facie retaliation claim under . . . the ADA, a plaintiff must show that (1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (citation omitted).

"To establish that a plaintiff engaged in statutorily protected expression, [the Eleventh Circuit] ha[s] held that a plaintiff must show that [he] had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* (quotation omitted). As for the "adverse action" element, "[a]n employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *See Lucas*, 257 F.3d at 1261. Finally, the causal relation prong can be satisfied, for purposes of making the *prima facie* case, so long as plaintiff can demonstrate "that the protected activity and the adverse action were not wholly unrelated." *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (quotation omitted). The alleged adverse action must "follow[ ] the protected conduct[,]" which stems from "the important requirement that the employer was actually aware of the protected expression at the time it took adverse employment action." *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) (quotation omitted).

Here, Mr. Williams has failed to show that he was engaged in any sort of

statutorily protected activity or that the adverse employment actions that he suffered were causally related to the protected expression. Mr. Williams has only alleged two forms of expression which could possibly constitute statutorily protected expression: his filing of an EEOC charge and his contact, and involvement of, the NAACP. (*See* Doc. 1 at 4, 6–7). The EEOC charge was filed on July 20, 2020, roughly twenty-one months after Mr. Williams was terminated and roughly eighteen months after Mr. Williams was not rehired by the School Board. (*See id.* at 5–6). Accordingly, the adverse employment actions that Mr. Williams experienced could not have been in retaliation for his filing a charge with the EEOC. *See Griffin*, 182 F.3d at 1284 ("At a minimum, [plaintiff] must show that the adverse act followed the protected conduct.").

Mr. Williams also states that he "[c]alled the NAACP [and] got them involved," which could presumably constitute statutorily protected expression. (*Id.* at 6). It is clear from Mr. Williams's Complaint that he had already been terminated by the School Board at the time that he involved the NAACP. Thus, the only potential adverse employment action that he might have suffered after involving the NAACP is that the school board failed to rehire him, and he was "demoted [and] had to go to [the] "back of the line." (*Id.* at 5). The only statement in the Complaint that could be construed as alleging some causal connection between Mr. Williams's protected speech and the adverse employment actions that he has alleged to have suffered is that "when the NAACP got involved things went downhill from there I was never offered any other position although released to

11

come back to work." (*Id.* at 4). But it is unclear exactly what Mr. Williams's communications with the NAACP were, whether the School Board was aware of the NAACP's involvement, or how the NAACP's involvement in his case was causally related to the School Board's decision not to rehire him. Without further information or allegations, the Court cannot determine how, if at all, Mr. Williams's communications with the NAACP and the adverse employment actions that he suffered "were not wholly unrelated." *See Shotz*, 344 F.3d at 1180 n.30 ("To prove a causal connection, we require a plaintiff only to demonstrate that the protected activity and the adverse action were not wholly unrelated") (quotation omitted). Accordingly, Mr. Williams has failed to state a *prima facie* claim for retaliation.

## CONCLUSION

For the foregoing reasons, Mr. Williams's claims that the School Board violated the ADA by (1) failing to hire him, (2) terminating of his employment, (3) failing to accommodate his disability, (4) retaliating, and (5) "demot[ing] [him] [and] [sending him to] [the] back of the line" are due to be dismissed for failure to state a claim. Accordingly,

1. Defendant School Board of Pinellas County's Motion to Dismiss (Doc. 7) is **GRANTED**.

2. Plaintiff Billy James Williams's Complaint is **DISMISSED** without prejudice. Should he desire to amend his Complaint, any amended complaint is due to this Court on or before April 21, 2023.

3. The Clerk of Court is **DIRECTED** to change the party name for Defendant

in the CM/ECF docket from "Pinellas County Schools" to "School Board of Pinellas County, Florida."

ORDERED at Tampa, Florida on April 6, 2023.

                                                */s/ John L. Badalamenti*
                                                JOHN L. BADALAMENTI
                                                UNITED STATES DISTRICT JUDGE